ADELAIDE M. COOK, Plaintiff, *v.* LAWRENCE L. COOK, Defendant.

Supreme Court, Special Term, Onondaga County, January 20, 1946.

*Egbert L. Wildman, Jr.,* and *Egbert L. Wildman, Sr.,* for plaintiff.

*Paul R. Shanahan* for defendant.

SEARL, J. In motion No. 1, plaintiff seeks an order directing the Clerk of the County of Onondaga to enter a judgment for the sum of $4,228, in favor of plaintiff against defendant, an amount claimed to be due for arrears for support of a daughter of the parties, by virtue of a judgment and decree in an action for separation, granted December 23, 1927.

In motion No. 2, defendant asks to modify the judgment aforesaid by dispensing with payments beyond those heretofore made.

An examination of numerous affidavits filed with the court discloses the following facts: In December, 1927, a judgment of separation in favor of the plaintiff wife was entered in the Onondaga County Clerk's Office. Defendant was directed to pay $7 a week for the support of a daughter, then six years

of age. In October of the following year plaintiff and daughter moved to Philadelphia. Defendant continued to mail money orders to his wife at a designated address until March, 1930. During that month a letter containing the customary money order was returned, with the notation that plaintiff was no longer employed at that address. Until August, 1938, defendant claims to have received no communication from his wife or daughter, although the decree granted him the privilege of visitation. The wife alleges no demands for payment nor does she assert informing the husband of her whereabouts. She urges that the husband might have ascertained the whereabouts of the daughter by diligent inquiry among relatives.

During March, 1930, plaintiff commenced an action in the Court of Common Pleas in Pennsylvania for an absolute divorce from her husband and in December of the same year she was granted a decree. The husband did not appear. In August, 1931, plaintiff married one George A. Dolan. In July, 1935, she was granted a decree of divorce from Dolan. In 1938, she returned to Syracuse. Thereupon defendant recommenced payment of $7 weekly for the support of his daughter, continuing the payments until she obtained employment in August of 1939. The plaintiff has again remarried.

The daughter became twenty-one years of age in October, 1942. During the period for which plaintiff now seeks payment by entry of judgment, the daughter states she has no knowledge that " plaintiff in any manner communicated with the defendant herein or that she made any demand or request for said payments." Likewise, one James Cook makes affidavit to the effect that " the plaintiff acknowledged and admitted that she had withheld her address and that of her daughter from the defendant and explained simply that she did not want him bothering her during that period of time." Defendant urges that he was not informed by plaintiff that she had obtained a divorce and remarried. Dolan, the second husband, states that during the years he was married to plaintiff he had no knowledge that she made any effort to obtain support for her daughter from the defendant, nor that defendant was in any way obligated; that Dolan contributed in part to the support of the daughter.

Consequently we have presented the question whether legally or equitably a judgment of the amount demanded or any judgshould follow. The court is convinced that defendant was willing and ready to comply with the orders of the court as the small amounts accrued from week to week, had he been furnished with the plaintiff's address. A present judgment for

the accumulated amounts might readily result in oppression. Such a judgment would not be dischargeable in bankruptcy. From an equitable standpoint it might well be asked whether a wife can voluntarily place herself beyond the pale of assistance, seek seclusion, and then, when desire dictates, return to her former home and demand payment. The decree of separation granted the husband the right to visit his daughter. This right was curtailed when the wife took the daughter with her to reside in Pennsylvania. From a legalistic angle, however, we are confronted with the question as to whether any amounts advanced by the wife for the support of the daughter become vested, or whether the court can exercise a sound discretion in granting or denying the right to enter judgment therefor.

Turning now to the law that must govern the court we find a multiplicity of decisions. Plaintiff urges that regardless of the equities this court is powerless to forgive past-due payments, in other words, that an order can only be prospective and not retrospective, that plaintiff's rights are vested. Such an interpretation was indicated in *Krauss* v. *Krauss* (127 App. Div. 740) and followed in subsequent decisions until *Kirkbride* v. *Van Note* (275 N. Y. 244). However, the holding there related only to money due for the support of a wife and no mention was made indicating that the same rule applied to sums due for the support of a child of the parties. Later (1939) the Court of Appeals in *Karlin* v. *Karlin* (280 N. Y. 32, 36) in substance reaffirmed this decision, saying: " It follows, we think, that the Special Term was warranted in its amendment of the judgment *nunc pro tunc* as of the date it became final * * *." Here, again, the question related only to the support of a wife, and not a child.

The " rule has long been recognized as the law both in England and this country " (*De Brauwere* v. *De Brauwere*, 203 N. Y. 460, 462–463) to the effect that " A parent is under a natural obligation to furnish necessaries for his infant children; and if the parent neglect that duty, any other person who supplies such necessaries is deemed to have conferred a benefit on the delinquent parent, for which the law raises an implied promise to pay on the part of the parent." (*Van Valkinburgh* v. *Watson*, 13 Johns. 480.) Both of the last-mentioned authorities are cited with approval in *Laumeier* v. *Laumeier* (237 N. Y. 357, 365), the court there stating: " And we there held [*Kenny* v. *Meislahn,* 69 App. Div. 572] that the common-law disability of the wife to sue the husband having been removed, a wife who has applied her separate estate to the purpose of an obli-

gation resting primarily upon her husband may now recover from him the reasonable amounts which she has thus expended out of her separate estate in discharge of his obligation.''

The Fourth Department had occasion to pass upon very similar facts in *Viall* v. *Viall* (263 App. Div. 548, 549). The decision was rendered by a divided court. The majority of the court held that a '' motion for leave to docket a judgment for past due alimony for the support of the plaintiff's son should have been denied. The record indicates that the son received his support during the period covered by the moving papers from his maternal grandfather without any promise, express or implied, upon the part of the defendant, the plaintiff or the son to reimburse him therefor.'' The court differed as to whether the following language in *Swanton* v. *Curley* (273 N. Y. 325, 329) applied: '' The rule is that an action brought by a divorced wife against her former husband to recover money spent for their child's maintenance is brought for the benefit of the child (*Laumeier* v. *Laumeier,* 237 N. Y. 357, 364, *supra*), but when a child has been adequately supported by one who maintained it without expectation of reimbursement, certainly a third party, even though she be the mother, can have no standing in an action brought by her.'' There '' the stepfather gratuitously and without any evidence of expected reimbursement supported the child   *   *   *.''

Again, the Second Department has held in *Probst* v. *Probst* (259 App. Div. 1090) that to permit a mother to recover for the support of a son when others were supporting him, or when he was supporting himself, would amount to unjust enrichment of the wife.

An interesting question is presented as to whether the language used by the court in *Silkworth* v. *Silkworth* (255 App. Div. 226, 227) applies. In an application to punish plaintiff for contempt, the trial court imposed a fine of $4,190. The Second Department reversed the order on the basis that if a child of the parties was voluntarily supported by a third party or if the wife '' paid for such support without expecting to be reimbursed by the husband, then, of course, the money to be paid under the award for the child's benefit was not required   *   *   *.'' The court held that any default on the part of the husband would only be technical and that any repayment to the wife would '' be an unjust and inequitable enrichment.'' The appellate court held that under such circumstances the lower court improperly exercised its discretion in punishing for contempt, remitting the proceeding to Special Term to take

proof as to whether the wife made any demands upon the husband for payment of the amounts awarded for the benefit of the child.

In the instant proceeding the moving papers fail to show any demand on the part of the wife; in fact the inference can be fairly drawn that she preferred to keep her whereabouts in Pennsylvania unknown to her husband.

The vital question presently before the court is: Does section 1171-b impose a mandate on this court to the extent of directing entry of judgment for all sums advanced by the wife for the care of this child, or may the court exercise its sound discretion as to what amount, if any, judgment shall be directed? *Treherne-Thomas* v. *Treherne-Thomas* (267 App. Div. 509, 512) held that " Installments of alimony thus awarded by a final judgment create vested rights which the court has no power to nullify." Justice UNTERMYER, writing for the majority of the court, safeguards his position by the expression (p. 513): " But even if discretion resides in the court, we think it would be improvident to exercise it in such a case as this." Justice DORE, dissenting writes (p. 513): " The language of section 1171-b * * * is permissive not mandatory."

The Second Department in *McCanliss* v. *McCanliss* (268 App. Div. 138, 142 [1944]) expressed it: " But under the statute the entry of judgment for arrears rests in the court's discretion. (Civ. Prac. Act., § 1171-b; *Gehring* v. *Gehring*, 262 App. Div. 1065.) "

Were the application one to punish defendant for contempt, clearly the court could exercise discretion. The *Gehring* decision (262 App. Div. 1065, *supra*), last above referred to, comes from the Fourth Department. The initial sentence of the memorandum reads: " Order denying plaintiff's motion for entry of judgment for accrued alimony reversed on the law and facts as a matter of discretion * * *."

In conclusion we may properly consider whether the recent decision in *Carbulon* v. *Carbulon* (293 N. Y. 375) applies. Section 1171-b was not enacted until 1939 (L. 1939, ch. 431). In the cited case a wife sought the application of the section as to temporary alimony that accumulated from 1932 to 1936. The plaintiff in the instant proceeding seeks a judgment for accumulations between the years 1930 to 1938, likewise before the passage of the statute. The distinction is apparent from comparison of the facts. For enforcement of plaintiff's rights in the cited case she might proceed by contempt or sequestration (Civ. Prac. Act, §§ 88, 1171, 1171-a, 1172). The right that

she might enforce was that provided for in section 1169 relating exclusively to an allowance " during the pendency " of an action. The action automatically terminated and plaintiff lost the " right to enforce payment " of temporary alimony when she remarried in Vermont in 1938, her husband meanwhile having obtained a divorce in Connecticut. In the instant proceeding the wife seeks to invoke the provisions of section 1171-b, not for the purpose of collecting temporary alimony but to enforce the terms of a final judgment and decree. So far as any funds advanced for the support of her daughter as were required to be paid by the defendant, the amendment of 1939 granted her no new remedy. Her former remedies provided adequate channels through which she might seek reimbursement by action. As to the instant plaintiff the amendment afforded only a new method of procedure. Before its passage the law permitted her to recover for moneys advanced for the support of her infant child. The conclusion arrived at is approved in *Doncourt* v. *Doncourt* (245 App. Div. 91, affd. 275 N. Y. 470).

The following questions of fact are first necessary to be determined as an aid to the court in the exercise of its discretion: (1) What sums of money, if any, did plaintiff herself advance for the support of the infant daughter from the time payments from defendant ceased until they were resumed? (2) Did the plaintiff from March, 1930, until August, 1938, make any demand upon defendant for unpaid alimony?

Hon. FRANK J. CREGG of Syracuse, N. Y., Official Referee of the Supreme Court, is hereby designated to try, determine and report his findings thereon accordingly.

Order accordingly.